J-S49044-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: M.E.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.M.M., NATURAL | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 532 WDA 2017 |

Appeal from the Decree Entered March 13, 2017
In the Court of Common Pleas of Butler County
Orphans' Court at No(s): O.A. No. 51 of 2016

| | | |
|---|---|---|
| IN RE: P.R.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.M.M., NATURAL | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 533 WDA 2017 |

Appeal from the Decree Entered March 13, 2017
In the Court of Common Pleas of Butler County
Orphans' Court at No(s): O.A. No. 52 of 2016

BEFORE:   DUBOW, SOLANO, and FITZGERALD[*], JJ.

MEMORANDUM BY FITZGERALD, J.:             FILED SEPTEMBER 29, 2017

S.M.M. ("Mother") appeals from the decrees granting the petitions filed

by S.A.M. ("Father"), involuntarily terminating Mother's parental rights

to her minor daughters, M.E.M., born in September of 2004, and P.R.M.,

_____

[*] Former Justice specially assigned to the Superior Court.

born in September of 2006 (collectively "Children"), pursuant to sections 2511(a)(1), (2) and (b) of the Adoption Act.[1]  After careful review, we affirm.

Mother and Father (collectively, "Parents") are the natural parents of Children.[2]  Parents were married, but later divorced.  Father married his current spouse ("Stepmother") in September of 2015.  Children reside with Father and Stepmother, along with Stepmother's three children from a previous relationship.  Mother currently resides with her sister and Mother's three-year-old daughter from another relationship.

In 2002, Mother was involved in a car accident, which left her permanently disabled.  N.T., 1/3/2017, at 10-11, 22.  Because of her injury, Mother was prescribed pain medication.  Id. at 22.  Mother became addicted to the pain medication and subsequently began abusing heroin and alcohol.  Id. at 40.  Mother's drug addiction led her to have a lengthy criminal history, which began in 2004.  Mother's last arrest was in 2012 or 2013.  N.T. at 15. In all, Mother has ten separate convictions and has been incarcerated a total of twenty-nine months over eight years for various crimes, including driving under the influence, retail theft, simple assault, and

_____

[1] On April 17, 2017, this Court sua sponte consolidated Mother's two appeals – each challenging the decrees terminating Mother's parental rights to her daughters – for a single decision.  See Pa.R.A.P. 513.

[2] Mother also has three children from other relationships.

several drug-related offenses. See Petitioner's Exhibit 4 (Butler County Criminal Docket); N.T. at 15. Mother is currently on probation until 2028. N.T. at 6. On March 10, 2015, Mother entered treatment for her drug and alcohol addiction and is currently in remission.

Additionally, Mother has been diagnosed with multiple mental health issues, including bipolar disorder, borderline personality disorder, post-traumatic stress disorder, and schizophrenia. See Petitioner's Exhibit 5; N.T. at 56. Since 2010, Father has filed two Protection from Abuse ("PFA") petitions against Mother, which the court granted on September 14, 2010 and September 24, 2013, respectively. N.T. at 74. Both PFA orders were in effect for three years. Under the terms of the original PFA, Father was granted exclusive custody of Children. See Petitioner's Exhibit 2. In 2012, however, Father petitioned the court to modify the PFA in order to permit Mother to contact Father regarding custody of the children. N.T. at 37.

For the six years following the implementation of the original PFA, Mother had one, one-hour visit with Children at a nearby park. Id. at 69. Mother never sent letters, made phone calls to Children, sent gifts, or financially supported Children in any way. Id. at 10. Mother made two attempts to contact Father regarding visitation with Children through her various probation officers. Id. at 19. On both occasions, Father denied Mother visitation.

On July 15, 2016, Father filed a petition to involuntarily terminate Mother's parental rights to Children.[3]  On October 19, 2016, counsel was appointed for Children.  Following a continuance, a hearing on Father's petition was held on January 3, 2017.  On March 13, 2017, the orphans' court entered its findings of facts and decrees terminating Mother's parental rights.  On April 4, 2017, Mother filed her notice of appeal along with a concise statement of errors complained of pursuant to Pa.R.A.P. 1925(a)(i) and (b).

Mother now presents the following claim for our review: "Whether the [orphans'] [c]ourt erred in finding that [Father] presented clear and convincing evidence sufficient to justify terminating the parental rights of [Mother], where [Father] had put obstacles in [Mother's] way, and [Mother] displayed reasonable firmness in overcoming those obstacles?"  Mother's Brief at 3.

We review an appeal from the termination of parental rights in accordance with the following standard.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of

_____

[3] The Adoption Act required Father in his petition to involuntarily terminate Mother's parental rights to Child to "aver that an adoption is presently contemplated [and] that a person with a present intention to adopt exists[,]" and the record reflects that he complied with this requirement.  See 23 Pa.C.S. § 2512(b); In re E.M.I., 57 A.3d 1278, 1285 (Pa. Super. 2012); see also Petition for Involuntary Termination of Parental Rights, 7/15/16, ¶ 11.

a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. In re: R.J.T., 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. Id.; [In re] R.I.S., 36 A.3d 567[, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Id.; see also Samuel Bassett v. Kia Motors America, Inc., 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); Christianson v. Ely, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. Id.

As we discussed in R.J.T., there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. R.J.T., 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. In re Adoption of Atencio, 650 A.2d 1064, 1066 (Pa. 1994).

In re Adoption of S.P., 47 A.3d 817, 826-27 (Pa. 2012).

Termination of parental rights is governed by statute, 23 Pa.C.S. § 2511, which requires a bifurcated analysis. First, the orphans' court must examine the parent's conduct. See, e.g., In re A.L.D., 797 A.2d 326, 339

- 5 -

(Pa. Super. 2002). The burden of proof is on the petitioner to establish by clear and convincing evidence the existence of grounds for termination under section 2511(a). In re J.L.C. 837 A.2d 1247, 1251 (Pa. Super. 2003). If termination is found by the orphans' court to be warranted under section 2511(a), it must then turn to section 2511(b), and determine if termination of the parent's rights is in the child's best interest. In re Adoption of R.J.S., 901 A.2d 502, 508 (Pa. Super. 2006). If the orphans' court's decision is supported by competent evidence, this Court must affirm the decision "even if the record could also support the opposite result." In re Adoption of T.B.B., 835 A.2d 387, 394 (Pa. Super. 2003).

Here, the orphans' court terminated Mother's parental rights based on sections 2511(a)(1), (2) and (b), which provide as follows:

> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> \* \* \*

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), and (b). We need only agree with the orphans' court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). We will therefore examine the facts under section 2511(a)(1).

To meet the requirements of section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." In re Z.S.W., 946 A.2d 726, 730 (Pa. Super. 2008) (citing R.J.S., 901 A.2d at 510). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to analyze Section 2511(b). Id. (quoting In re Adoption of Charles E.D.M., 708 A.2d 88, 92 (Pa. 1998)).

- 7 -

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." In re B., N.M., 856 A.2d 847, 855 (Pa. Super. 2004) (quoting In re C.M.S., 832 A.2d 457, 462 (Pa. Super. 2003). Rather,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

Id. (citations omitted). Critically, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship with his or her child."

In re Adoption of S.P., 47 A.3d at 828 (discussing In re Adoption of McCray, 331 A.2d 652 (Pa. 1975)).

Instantly, Mother argues that the orphans' court erred by terminating her parental rights because "she displayed reasonable firmness in her attempts to overcome the obstacles created by Father." Mother's Brief at 6. In particular, Mother asserts that her "fear of retaliation" by Father prevented her from enforcing her parental right under the PFAs. Id. at 9. Thus, Mother argues that her attempts to contact Father via her probation

officer demonstrated her "reasonable firmness" in overcoming the obstacles created by Father.

The orphans' court explained its decision as follows:

> The credible and undisputed facts indicate by clear and convincing evidence that Mother has failed to perform parental duties for at least six months preceding Father's filing of his Petition, in that she has not seen Child[ren] since early 2012. Furthermore, Mother has failed to perform any parental duties, in that she has neither made contact with Child[ren] since 2012 nor provided Child[ren] with any financial or emotional support. Mother's only attempts to reestablish a relationship with Child[ren] occurred when she utilized her Parole Officers to contact Father on two occasions in order to initiate visitation between Child[ren] and Mother, which Father objected to on both occasions. Despite Father's objections, however, Mother made no further attempt to reestablish a relationship with Child[ren].

Orphans' Ct. Op., 3/13/2017, at 4 (unpaginated).

We find that the orphans' court did not abuse its discretion in terminating Mother's parental rights under section 2511(a)(1). Despite Father's obstructive behavior, Mother did very little in the face of these barriers to fulfill her parental duties since her last contact with Children in early 2012. Specifically, the record reveals that Mother utilized her probation officer on only two occasions to attempt to contact Father about visits with Children. Further, Mother never attempted to modify the PFA order in order to have contact with Children. In fact, it was Father who petitioned the court to modify the PFA in early 2012, thereby allowing Mother the opportunity to enforce her parental rights.

Moreover, Mother testified that she chose not to file for visitation until after the expiration of the second PFA order "so [she] didn't get in any trouble." N.T. at 38. However, "parental rights may not be preserved by waiting for some more . . . convenient time for the performance of parental duties and responsibilities," In re D.J.S., 737 A.2d 283, 287 (Pa. Super. 1999), "while others provide the child with his or her immediate physical and emotional needs." In re Adoption of Godzak, 719 A.2d 365, 368 (Pa. Super. 1998) (citation omitted). Because Mother failed to act affirmatively in order to maintain her relationship with Children, even under difficult circumstances created by Father, as well as those she created herself, we find that Father proved the statutory elements for termination under section 2511(a)(1). See B., N.M., 856 A.2d at 855 (explaining that a parent "must exercise reasonable firmness in resisting the obstacles" which limit his or her ability to maintain a parent/child relationship).

Thus, the record confirms that Mother refused or failed to perform parental duties during the six months immediately preceding the filing of the termination petition. It was within the court's discretion to accept the testimony of Father, and to conclude that Mother made no effort to contact Children during the relevant six months. Accordingly, we discern no abuse of discretion.

We next consider whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b). We have discussed our analysis under Section 2511(b) as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

In re Adoption of C.D.R., 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting In re N.A.M., 33 A.3d 95, 103 (Pa. Super. 2011)) (citations and quotation marks omitted).

The orphans' court concluded that terminating Mother's parental rights would best serve Children's needs and welfare. The court found that

> [Children do] not have a strong bond with Mother as [they] last saw Mother in early 2012 when [they were] seven [and five] years old[, respectively]. Child[ren] last resided with Mother in August 2010 when Child[ren were] only five [and three] years old. Mother's history of

- 11 -

incarceration and addiction has prevented the creation of a meaningful bond with Child[ren]. The evidence would support that there would not be any emotional harm to Child[ren] in terminating the bond. Further, [Stepmother] is willing, able, and eager to adopt Child[ren], and Child[ren are] very close and bonded with [Stepmother].

Orphans' Court Opinion, 3/13/2017, at 5 (unpaginated).

We again conclude that the record supports the orphans' court's findings. A significant aspect in this case is that Children enjoy the intangibles of love, comfort, security, and stability while in the custody of Father and Stepmother. Based upon Mother's difficulties with drug addiction, mental health issues and the law, her relationship with Children, if any, lacks security, stability, and safety. Moreover, as discussed above, the orphans' court found that the severance of Mother's bond with Children would not have a harmful effect on Children.

Although Mother's love for Children is not in question, along with her desire for an opportunity to serve as Children's mother, "a parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." In re Z.P., 994 A.2d 1108, 1121 (Pa. Super. 2010). "[A] child's life simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." In re Z.S.W., 946 A.2d at 732 (citations and quotation marks omitted). Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's

right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." In re B., N.M., 856 A.2d at 856.

Instantly, the orphans' court found that Mother has not provided for Children's developmental, physical and emotional needs and welfare. As there is competent evidence in the record that supports the orphans' court's credibility and weight assessments regarding Children's needs and welfare, we conclude the orphans' court did not abuse its discretion as to section 2511(b). As such, the orphans' court properly granted Father's petition to terminate Mother's parental rights to Children.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2017